# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

| | |
|---|---|
| **MATTHEW KOCHER**, on behalf of himself and all others similarly situated,<br><br>                 Plaintiff,<br><br>v.<br><br>**BUILDERS MUTUAL INSURANCE COMPANY; AND BUILDERS MUTUAL INSURANCE COMPANY, INC.**,<br><br>                 Defendants. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Matthew Kocher ("Plaintiff"), through his attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants Builders Mutual Insurance Company and Builders Mutual Insurance Company, Inc. (together, "Builders Mutual" or "Defendants"), and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff alleges the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This class action arises from Defendants' failure to protect highly sensitive data.

2. Defendants Builders Mutual "provid[e] insurance coverage exclusively to the construction industry."[1]

3. As such, Defendants store a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about their current and former employees and claimants. But Defendants lost control over that data when cybercriminals infiltrated their insufficiently protected computer systems in a data breach (the "Data Breach")

4. It is unknown for precisely how long the cybercriminals had access to Defendants' network before the breach was discovered. In other words, Defendants had no effective means to prevent, detect, stop, or mitigate breaches of their systems—thereby allowing cybercriminals unrestricted access to employees and claimants' PII/PHI.

5. On information and belief, cybercriminals were able to breach Defendants' systems because Defendants failed to adequately train employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendants' failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

6. Plaintiff is a Data Breach victim, having received a breach notice (attached as Ex. A). He brings this class action on behalf of himself, and all others harmed by Defendants' misconduct.

7. The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, employees and claimants' private information was exactly that—private.

---

[1] *Our Company*, BUILDERS MUTUAL, https://www.buildersmutual.com/about/our_company (last accessed Oct. 11, 2023).

Not anymore. Now, employees and claimants' private information is forever exposed and unsecure.

## PARTIES

8.     Plaintiff, Matthew Kocher, is a natural person and citizen of Florida. He resides in Jacksonville, Florida where he intends to remain.

9.     Defendant, Builders Mutual Insurance Company is legal name of an insurance company incorporated in North Carolina with its principal place of business at 5580 Centerview Drive, Raleigh, North Carolina 27606.

10.    Defendant, Builders Mutual Insurance Company, Inc., is also believed to be the same company, though operating under a different version of the corporate name and is the entity that issued the notification of the Data Breach to the Plaintiff and the Class. This company has its principal place of business at 5580 Centerview Drive, Raleigh, North Carolina 27606.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff and Defendants are citizens of different states. And there are over 100 putative Class members.

12.    This Court has personal jurisdiction over Defendants because they are headquartered in North Carolina, regularly conduct business in North Carolina, and have sufficient minimum contacts in North Carolina.

13.    Venue is proper in this Court because Defendants' principal office is in this District, and because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

# BACKGROUND

## *Defendants Collected and Stored the PII/PHI of Plaintiff and the Class*

14.     Defendants "provid[e] insurance coverage exclusively to the construction industry."[2] And while Defendants are headquartered in North Carolina, they are active throughout the Mid-Atlantic and Southeast.[3] By 2018, Defendantss boasted "$341 million in premium [and] more than 23,500 policyholders."[4]

15.     As part of their businesses, Defendants receive and maintain the PII/PHI of thousands of their current and former employees and claimants.

16.     Defendants explain that they collect a plethora of sensitive PII/PHI:

    a.    "In the course of providing our products and services to you, Builders Mutual Insurance Company may collect nonpublic personal information from you, or from third parties about you."[5]

    b.    "Builders Mutual may gather information about you through the use of credit reporting agencies or directly through the use of written inquiries."[6]

    c.    "Depending on the type of product or service we are providing, Builders Mutual Insurance Company may obtain customer information, financial information, and/or health information about you."[7]

---

[2] *Our Company*, BUILDERS MUTUAL, https://www.buildersmutual.com/about/our_company (last accessed Oct. 11, 2023).
[3] *Id*.
[4] *Id*.
[5] *Builders Mutual Privacy Notice*, BUILDERS MUTUAL, https://www.buildersmutual.com/about/privacy (last accessed Oct. 11, 2023).
[6] *Id*.
[7] *Id*.

d.　"Customer information includes . . . your name, address, telephone number, and driver information . . . premium payment and claims history, accident information or medical information related to claims, as well as items such as payroll and motor vehicle reports."[8]

e.　"Financial information . . . includes information such as your credit history, income, assets, type and value of other insurance products you own or for which you have applied, and the amount of insurance premiums you pay to other insurance companies."[9]

f.　"Health information includes information about your health and medical history, and your insurance underwriting risk factors."[10]

17.　In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and Class members themselves took reasonable steps to secure their PII/PHI.

18.　Under state and federal law, businesses like the Defendants have duties to protect their current and former employees and claimants' PII/PHI and to notify them about breaches.

19.　Defendants recognize these duties, declaring that:

a.　"We appreciate the trust you have placed in us."[11]

b.　"We have security measures in place to protect the loss, misuse, and alteration of information under our control."[12]

---

[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

c.      "[W]e will never use the information you submit . . . in a new way without first providing you an opportunity to opt-out or otherwise prevent that use."[13]

d.      "Builders Mutual does not share any information we have gathered . . . [such] information is used for internal uses only."[14]

e.      "Builders Mutual takes the confidentiality, privacy, and security of information in our care seriously."[15]

***Defendants' Data Breach***

20.     On December 14, 2022, Defendants were hacked.[16] In fact, Defendants admitted that the hacking was successful: "there was unauthorized access . . . and certain files were *copied* on December 15, 2022."[17]

21.     Because of Defendants' Data Breach, at least the following types of PII/PHI were compromised:

a.      names;

b.      Social Security numbers;

c.      medical information;

d.      health insurance information; and

e.      workers' compensation information.[18]

---

[13] *Id.*

[14] *Id.*

[15] *Data Breach Notifications*, MAINE ATTY GEN, https://apps.web.maine.gov/online/aeviewer/ME/40/7c0e9e65-75db-409b-9c1a-229ad57f85be.shtml (last accessed Oct. 11, 2023).

[16] *Id.*

[17] *Id.* (emphasis added).

[18] *Id.*

22.     Here, Defendants fail to sufficiently explain what the exposure of "workers'
compensation information" entails. But upon information and belief, the exposure of such
information includes the exposure of highly sensitive financial information.

23.     In total, Defendants injured at least 64,761 persons—via the exposure of their
PII/PHI—in the Data Breach.[19] Upon information and belief, these 64,761 persons include
Defendants' current and former employees and claimants.

24.     And yet, Defendants waited until September 18, 2023—a full *278 days after* the
Data Breach—before they began notifying the class.[20]

25.     Thus, Defendants kept the Class in the dark—thereby depriving the Class of the
opportunity to try and mitigate their injuries in a timely manner.

26.     And when Defendants did notify Plaintiff and the Class of the Data Breach,
Defendants acknowledged that the Data Breach created a present, continuing, and significant risk
of suffering identity theft, warning Plaintiff and the Class:

    a.     "remain vigilant against incidents of identity theft and fraud;"

    b.     "review your account statements;"

    c.     "monitor your credit reports for suspicious activity;" and

    d.     "educate yourself regarding identity theft, fraud alerts, credit freezes, and
           the steps you can take to protect your personal information by contacting
           the consumer reporting bureaus, the Federal Trade Commission, or your
           state Attorney General."[21]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*

27.     Defendants failed their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendants caused widespread injury and monetary damages.

28.     Since the breach, Defendants claim to be "working to implement additional safeguards and training to [their] employees."[22] But this is too little too late. Simply put, these measures—which Defendants now recognize as necessary—should have been implemented *before* the Data Breach.

29.     On information and belief, Defendants failed to adequately train their employees on reasonable cybersecurity protocols or implement reasonable security measures.

30.     Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiff and Class members for the injuries that Defendants inflicted upon them.

31.     Because of Defendants' Data Breach, the sensitive PII/PHI of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

32.     Upon information and belief, the cybercriminals in question are particularly sophisticated. After all, the cybercriminals: (1) defeated the relevant data security systems, (2) gained actual access to sensitive data, and (3) successfully "copied" documents."[23]

---

[22] *Id*.
[23] *Id*.

33.     And as the *Harvard Business Review* notes, such "[c]ybercriminals frequently use the dark web—a hub of criminal and illicit activity—to sell data from companies that they have gained unauthorized access to through credential stuffing attacks, phishing attacks, [or] hacking."[24]

34.     Thus, on information and belief, Plaintiff's and the Class's stolen PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

### Plaintiff's Experiences and Injuries

35.     Plaintiff is unsure how Defendants came to obtain his highly sensitive PII/PHI. Upon information and belief, Defendants required that they obtain Plaintiff's PII/PHI pursuant to—and to facilitate—Defendants' business of selling insurance to the construction industry.

36.     Upon information and belief, the specific details of how (and why) Defendants obtained and maintained Plaintiff's PII/PHI can be discovered from materials within Defendants' custody and control.

37.     Nonetheless, Defendants obtained and maintained Plaintiff's PII/PHI. And as a result, Plaintiff Matthew Kocher was injured by Defendants' Data Breach.

38.     Plaintiff trusted that an organization like the Defendants who obtained and maintained his highly sensitive PII/PHI would use reasonable measures to protect it according to Defendants' internal policies, as well as state and federal law. Defendants obtained and continue to maintain Plaintiff's PII/PHI and have a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

39.     Plaintiff does not recall ever learning that his information was compromised in a data breach incident—other than the breach at issue here.

---

[24] Brenda R. Sharton, *Your Company's Data Is for Sale on the Dark Web. Should You Buy It Back?*, HARVARD BUS. REV. (Jan. 4, 2023) https://hbr.org/2023/01/your-companys-data-is-for-sale-on-the-dark-web-should-you-buy-it-back.

40. Plaintiff received a Notice of Data Breach in or around September 2023.

41. Through the Data Breach, Defendants compromised Plaintiff's:

    a.    name;

    b.    Social Security number;

    c.    date of birth; and

    d.    worker's compensation information.

42. So far, Plaintiff *already* suffered from identity theft and fraud. Specifically, in September 2023, cybercriminals fraudulently charged his Bank of America Visa card for movie tickets and purchases at the retail store Lowe's.

43. Thus, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

44. Plaintiff has spent—and will continue to spend—significant time and effort monitoring his accounts to protect himself from identity theft. After all, Defendants directed Plaintiff to take those steps in their breach notice.

45. Plaintiff fears for his personal financial security and worries about what information was exposed in the Data Breach.

46. Because of Defendants' Data Breach, Plaintiff has suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiff's injuries are precisely the type of injuries that the law contemplates and addresses.

47. Plaintiff suffered actual injury from the exposure and theft of his PII/PHI—which violates his rights to privacy.

48.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendants were required to adequately protect.

49.     Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendants' Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

50.     Because of the Data Breach, Plaintiff anticipates spending considerable amounts of time and money to try and mitigate his injuries.

51.     Today, Plaintiff has a continuing interest in ensuring that his PII/PHI—which, upon information and belief, remains backed up in Defendants' possession—is protected and safeguarded from additional breaches.

### *Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft*

52.     Because of Defendants' failure to prevent the Data Breach, Plaintiff and Class members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.     loss of the opportunity to control how their PII/PHI is used;

    b.     diminution in value of their PII/PHI;

    c.     compromise and continuing publication of their PII/PHI;

    d.     out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII/PHI; and

h. continued risk to their PII/PHI—which remains in Defendants' possession—and is thus at risk for futures breaches so long as Defendants fail to take appropriate measures to protect the PII/PHI.

53. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

54. The value of Plaintiff and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "dark web"—further exposing the information.

55. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

56. One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data— first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

57. The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

58.     In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and Class members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff and other Class members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

59.     Defendants disclosed the PII/PHI of Plaintiff and Class members for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the PII/PHI of Plaintiff and Class members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

60.     Defendants' failure to promptly and properly notify Plaintiff and Class members of the Data Breach exacerbated Plaintiff and Class members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Knew—Or Should Have Known—of the Risk of a Data Breach***

61.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

62.     In 2021, a record 1,862 data breaches occurred, exposing approximately

293,927,708 sensitive records—a 68% increase from 2020.[25]

63.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[26]

64.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

***Defendants Failed to Follow FTC Guidelines***

65.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making.  Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendants—should use to protect against unlawful data exposure.

66.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[27]  The FTC declared that, *inter alia*, businesses must:

    a.     protect the personal customer information that they keep;

    b.     properly dispose of personal information that is no longer needed;

---

[25]  *See 2021 Data Breach Annual Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2022) https://notified.idtheftcenter.org/s/.
[26] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[27] *Protecting Personal Information: A Guide for Business,* FEDERAL TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

   c.  encrypt information stored on computer networks;

   d.  understand their network's vulnerabilities; and

   e.  implement policies to correct security problems.

  67.  The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

  68.  Furthermore, the FTC explains that companies must:

   a.  not maintain information longer than is needed to authorize a transaction;

   b.  limit access to sensitive data;

   c.  require complex passwords to be used on networks;

   d.  use industry-tested methods for security;

   e.  monitor for suspicious activity on the network; and

   f.  verify that third-party service providers use reasonable security measures.

  69.  The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

  70.  In short, Defendants' failure to use reasonable and appropriate measures to protect against unauthorized access to their current and former employees and claimants' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Failed to Follow Industry Standards***

71.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendants. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

72.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

73.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

74.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendants opened the door to the criminals—thereby causing the Data Breach.

***Defendants Violated HIPAA***

75.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly

known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[28]

76.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[29]

77.     The Data Breach itself resulted from a combination of inadequacies showing Defendants failed to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

    a.    failing to ensure the confidentiality and integrity of electronic PHI that they create, receive, maintain and transmit in violation of 45 C.F.R. § 164.306(a)(1);

    b.    failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

    c.    failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

---

[28] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[29] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

d.      failing to ensure compliance with HIPAA security standards by Defendants' workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.      failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.      failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.      failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h.      failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.      failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

78.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

79.     Plaintiff brings this class action under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class (the "Class"):

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by Builders Mutual in December 2022, including all those who received notice of the breach.

80.     Excluded from the Class are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors or assigns, and any Judge who adjudicates this case, including their staff and immediate family.

81.     Plaintiff reserves the right to amend the class definition.

82.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

83.     <u>Ascertainability</u>. All members of the proposed Class are readily ascertainable from information in Defendants' custody and control. After all, Defendants already identified some individuals and sent them data breach notices.

84.     <u>Numerosity</u>. The Class members are so numerous that joinder of all Class members is impracticable. Upon information and belief, the proposed Class includes at least 64,761 members.

85.     <u>Typicality</u>. Plaintiff's claims are typical of Class members' claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

86. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the proposed Class's common interests. his interests do not conflict with Class members' interests. And Plaintiff has retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

87. <u>Commonality and Predominance</u>. Plaintiff's and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class members—for which a class wide proceeding can answer for all Class members. In fact, a class wide proceeding is necessary to answer the following questions:

    a.    if Defendants had a duty to use reasonable care in safeguarding Plaintiff's and the Class's PII/PHI;

    b.    if Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    c.    if Defendants were negligent in maintaining, protecting, and securing PII/PHI;

    d.    if Defendants breached contract promises to safeguard Plaintiff and the Class's PII/PHI;

    e.    if Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

    f.    if Defendants' Breach Notice was reasonable;

    g.    if the Data Breach caused Plaintiff and the Class injuries;

    h.    what the proper damages measure is; and

> i.     if Plaintiff and the Class are entitled to damages, treble damages, and or injunctive relief.

88.     <u>Superiority.</u> A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for Class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

89.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

90.     Plaintiff and the Class (or their third-party agents) entrusted their PII/PHI to Defendants on the premise and with the understanding that Defendants would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

91.     Defendants owed a duty of care to Plaintiff and Class members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

92.     Defendants have full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiff and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

93.     Defendants owed these duties to Plaintiff and Class members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from Defendants' inadequate security practices. After all, Defendants actively sought and obtained Plaintiff and Class members' PII/PHI.

94.     Defendants owed—to Plaintiff and Class members—at least the following duties to:

      a.     exercise reasonable care in handling and using the PII/PHI in their care and custody;

      b.     implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

      c.     promptly detect attempts at unauthorized access;

      d.     notify Plaintiff and Class members within a reasonable timeframe of any breach to the security of their PII/PHI.

95.     Thus, Defendants owed a duty to timely and accurately disclose to Plaintiff and Class members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiff and Class members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

96.     Defendants also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI they were no longer required to retain under applicable regulations.

97. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiff and the Class involved an unreasonable risk of harm to Plaintiff and the Class, even if the harm occurred through the criminal acts of a third party.

98. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiff and the Class. That special relationship arose because Plaintiff and the Class (or their third-party agents) entrusted Defendants with their confidential PII/PHI, a necessary part of obtaining services from Defendants.

99. The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendants hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the PII/PHI —whether by malware or otherwise.

100. PII/PHI is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiff and Class members' and the importance of exercising reasonable care in handling it.

101. Defendants improperly and inadequately safeguarded the PII/PHI of Plaintiff and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

102. Defendants breached these duties as evidenced by the Data Breach.

103. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's and Class members' PII/PHI by:

    a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in their employ who were responsible for making that happen.

104. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiff and Class members which actually and proximately caused the Data Breach and Plaintiff and Class members' injury.

105. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiff and Class members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiff and Class members' injuries-in-fact.

106. Defendants have admitted that the PII/PHI of Plaintiff and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

107. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiff and Class members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

108. And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

109. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiff and Class members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach

that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## SECOND CAUSE OF ACTION
### Negligence *per se*
### (On Behalf of Plaintiff and the Class)

110.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

111.     Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' PII/PHI.

112.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to them. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiff and the Class members' sensitive PII/PHI.

113.     Defendants breached their respective duties to Plaintiff and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

114.     Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

115.     The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that,

because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

116.   But for Defendants' wrongful and negligent breach of their duties owed, Plaintiff and Class members would not have been injured.

117.   The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that their breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

118.   Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiff's and Class members' PHI.

119.   Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120.   Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

121.   As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

<u>**THIRD CAUSE OF ACTION**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

122.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

123. Plaintiff and Class members either directly contracted with Defendants or Plaintiff and Class members were the third-party beneficiaries of contracts with Defendants.

124. Plaintiff and Class members (or their third-party agents) were required to provide their PII/PHI to Defendants as a condition of receiving services and/or employment provided by Defendants. Plaintiff and Class members (or their third-party agents) provided their PII/PHI to Defendants or their third-party agents in exchange for Defendants' services and/or employment.

125. The contracts entered into by Plaintiff's and Class members' agents (for example, their employers), were made for the direct benefit of Plaintiff and the Class. Specifically, Plaintiff's and Class members' third party agents entered into contracts with Defendants to obtain insurance for Plaintiff and Class members.

126. Plaintiff and Class members (or their third-party agents) reasonably understood that a portion of the funds they paid Defendants would be used to pay for adequate cybersecurity measures.

127. Plaintiff and Class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

128. Plaintiff and the Class members (or their third-party agents) accepted Defendants' offers by disclosing their PII/PHI to Defendants or their third-party agents in exchange for services and/or employment.

129. In turn, and through internal policies, Defendants agreed to protect and not disclose the PII/PHI to unauthorized persons.

130.    In their Privacy Policy, Defendants represented that they had a legal duty to protect Plaintiff's and Class Member's PII/PHI.

131.    Implicit in the parties' agreement was that Defendants would provide Plaintiff and Class members (or their third-party agents) with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

132.    After all, Plaintiff and Class members (or their third-party agents) would not have entrusted their PII/PHI to Defendants or their third-party agents in the absence of such an agreement with Defendants.

133.    Plaintiff and the Class (or their third-party agents) fully performed their obligations under the implied contracts with Defendants.

134.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

135.    Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

136.    Defendants materially breached the contracts they entered with Plaintiff and Class members (or their third-party agents) by:

    a.    failing to safeguard their information;

b.     failing to notify them promptly of the intrusion into their computer systems that compromised such information.

c.     failing to comply with industry standards;

d.     failing to comply with the legal obligations necessarily incorporated into the agreements; and

e.     failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendants created, received, maintained, and transmitted.

137.     In these and other ways, Defendants violated their duty of good faith and fair dealing.

138.     Defendants' material breaches were the direct and proximate cause of Plaintiff's and Class members' injuries (as detailed *supra*).

139.     And, on information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the dark web.

140.     Plaintiff and Class members (or their third-party agents) performed as required under the relevant agreements, or such performance was waived by Defendants' conduct.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

141.     Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

142.     This claim is pleaded in the alternative to the breach of implied contract claim.

143.     Plaintiff and Class members (or their third-party agents) conferred a benefit upon Defendants. After all, Defendants benefitted from using their PII/PHI to provide services and/or facilitate employment.

144.     Defendants appreciated or had knowledge of the benefits they received from Plaintiff and Class members (or their third-party agents). And Defendants benefited from receiving Plaintiff's and Class members' PII/PHI, as this was used to provide services and/or facilitate employment.

145.     Plaintiff and Class members (or their third-party agents) reasonably understood that Defendants would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendants' duties under state and federal law and their internal policies.

146.     Defendants enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class members' PII/PHI.

147.     Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendants instead calculated to avoid their data security obligations at the expense of Plaintiff and Class members by utilizing cheaper, ineffective security measures. Plaintiff and Class members, on the other hand, suffered as a direct and proximate result of Defendants' failure to provide the requisite security.

148.     Under principles of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiff's and Class members' (or their third-party agents') employment and/or payment because Defendants failed to adequately protect their PII/PHI.

149.     Plaintiff and Class members have no adequate remedy at law.

150.     Defendants should be compelled to disgorge into a common fund—for the benefit of Plaintiff and Class members—all unlawful or inequitable proceeds that they received because of their misconduct.

## FIFTH CAUSE OF ACTION
### Violation Of North Carolina Unfair Trade Practices Act
### (On Behalf of Plaintiff and the Class)

151.    Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

152.    Defendants advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

153.    Defendants engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

a.      Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII/PHI, which was a direct and proximate cause of the Data Breach;

b.      Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.      Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq.*, which was a direct and proximate cause of the Data Breach;

d.      Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class members' PII/PHI; and

e.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. § 1681e, and the GLBA, 15 U.S.C. § 6801, *et seq*.

154.   Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII/PHI.

155.   Defendants intended to mislead Plaintiff and Class members and induce them to rely on their omissions.

156.   Had Defendants disclosed to Plaintiff and Class members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Defendants accepted the PII/PHI that Plaintiff and Class members entrusted to them while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendants' omissions, the truth of which they could not have discovered through reasonable investigation.

157.   Defendants acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff's and Class members' rights.

158.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including

from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII/PHI.

159.   Defendants' conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

160.   And, on information and belief, Plaintiff's PII/PHI has already been published— or will be published imminently—by cybercriminals on the dark web.

161.   Plaintiff and Class members seek all monetary and non-monetary relief allowed by law.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment
### (On Behalf of Plaintiff and the Class)

162.   Plaintiff incorporates by reference all other paragraphs as if fully set forth herein.

163.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

164.   In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiff alleges that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiff and Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

165.   Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendants breached, and continue to breach, their duties by failing to use reasonable measures to the data entrusted to it; and

d. Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiff and Class members.

166. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to it.

167. If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

168. And if a second breach occurs, Plaintiff and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiff and Class members' injuries.

169. If an injunction is not issued, the resulting hardship to Plaintiff and Class members far exceeds the minimal hardship that Defendants could experience if an injunction is issued.

170. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiff, Class members, and the public at large.

# PRAYER FOR RELIEF

Plaintiff and Class members respectfully request judgment against Defendants and that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiff and the proposed Class, appointing Plaintiff as class representative, and appointing his counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

C.   Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

D.   Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen PII/PHI;

E.   Awarding Plaintiff and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F.   Awarding restitution and damages to Plaintiff and the Class in an amount to be determined at trial;

G.   Awarding attorneys' fees and costs, as allowed by law;

H.   Awarding prejudgment and post-judgment interest, as provided by law;

I.   Granting Plaintiff and the Class leave to amend this complaint to conform to the evidence produced at trial; and

J.   Granting other relief that this Court finds appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all claims so triable.

Date: October 16, 2023

Respectfully submitted,

By:/s/Joel R. Rhine
Joel R. Rhine, NC SBN 16028
Martin A. Ramey, NC SBN 33617
Ruth A. Sheehan, NC SBN 48029
**RHINE LAW FIRM, P.C.**
1612 Military Cutoff Road, Suite 300,
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
Phone: (910) 772-9960
*jrr@rhinelawfirm.com*
*mjr@rhinelawfirm.com*
*ras@rhinelawfirm.com*
*ehw@rhinelawfirm.com*

Samuel J. Strauss*
Raina Borrelli*
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

*Attorneys for Plaintiff and Proposed Class*

*\*to file for pro hac admission*