# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

In re:

BUILDERS MUTUAL DATA SECURITY
INCIDENT LITIGATION

Case No. 5:23-CV-579-M-KS

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I.     INTRODUCTION

Plaintiffs Matthew Kocher, Mark Rogolino, and James Jackson (collectively "Plaintiffs" or "Settlement Class Representatives") submit the following memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 38). Notably, Defendants, Builders Mutual Insurance Company and Builders Mutual Insurance Company, Inc. ("BMIC" or "Defendants") do not oppose certification of the Settlement Class[1] for purposes of effectuating the Settlement submitted herewith for preliminary approval.

The Settlement follows months of good-faith, arms' length negotiations and provides that Defendants will pay $1,475,000 into a non-reversionary common fund (the "Settlement Fund") for the benefit of Plaintiff and Settlement Class Members. The Settlement Class Members will receive individual notice of the Settlement by U.S. mail. Every Participating Settlement Class Member can make a claim for up to three years of free credit monitoring, along with compensation up to $10,000 for unreimbursed economic losses arising from the Data Incident and/or up to 6 hours of

---

[1] Capitalized terms herein have the same meaning as those set forth in the Settlement Agreement (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit 1 to the Declaration of Proposed Class Counsel in Support of Plaintiff's Unopposed Motion for Preliminary Approval and to Direct Notice of Proposed Settlement to the Class ("Proposed Class Counsel Decl.")

lost time at $25.00/hour. Alternatively, Settlement Class members may claim a cash payment of $100.00 in lieu of all other benefits available under the Settlement. Notice and Settlement Administration costs, as well as litigation expenses, attorneys' fees, and Class Representative Service Awards as awarded by the Court will also be paid out of the Settlement Fund.

Plaintiffs and Settlement Class Counsel strongly endorse the Settlement as an excellent result for the Settlement Class and respectfully submit that the Court should grant preliminary approval and direct that Notice be sent to the Settlement Class in accordance with the Settlement Agreement.

## II.    SUMMARY OF THE LITIGATION

### A.  History of the Litigation

This class action arises out of Builders Mutual Insurance Company and Builders Mutual Insurance Company, Inc.'s ("Defendants" or "Builders Mutual") alleged failure to safeguard the personally identifiable information ("PII") that it maintained regarding Plaintiffs Matthew Kocher, Mark Rogolino, and James Jackson (collectively "Plaintiffs" or "Settlement Class Representatives") and Settlement Class Members. Plaintiffs allege that, on December 14, 2022, Builders Mutual's network was hacked (the "Data Incident"). Plaintiffs allege that this hacking exposed certain personally identifiable information ("PII") as well as personal health information ("PHI") of Builders Mutual's stakeholders, customers, employees of policyholders, current and former employees, and claimants. Specifically, the following types of PII were allegedly exposed: names, Social Security numbers, dates of birth, medical information, health insurance information, and worker's compensation information provided in connection with employment. On September 29, 2023, Builders Mutual began notifying Plaintiffs and the putative Settlement Class about the Data Incident.

On October 16, 2023, Plaintiff Matthew Kocher individually and on behalf of a putative class, filed an action against Builders Mutual in the Eastern District of North Carolina, titled *Kocher v. Builders Mutual Insurance Company et al*., Case No. 5:23-cv-579-M. On October 24, 2023, Plaintiff Mark Rogolino filed a class action complaint against Defendants arising out of the same Data Incident (Case No.5:23-cv-00597-BO) and on October 27, Plaintiff James Jackson filed a class action complaint against Defendants arising out of the same Data Incident (Case No. 4:23-cv-00181-M). Plaintiffs moved to consolidate their actions on November 7, 2023, which was granted by the Court. Plaintiffs subsequently filed a Consolidated Complaint on January 16, 2024 alleging: Negligence, Negligence *Per Se*, Breach of Implied Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Breach of Third-Party Beneficiary Contract, Unjust Enrichment, and Violation of the North Carolina Unfair Trade Practices Act.

While Defendants deny the Plaintiffs' allegations and deny any liability, the Parties determined that they desired to settle the Litigation, and thus avoid the expense, risk, exposure, inconvenience, uncertainty, and distraction of continued litigation relating to this Data Incident. As further explained herein, the terms of the proposed settlement are fair, adequate, and reasonable; the proposed Settlement Class meets the requirements for certification for purposes of settlement, and the proposed notice program provides the best practicable notice under the circumstances and comports with Fed. R. Civ. P 23(c)(2). Accordingly, Plaintiffs respectfully request that the Court take the first step in the approval process and enter the Parties' proposed Preliminary Approval Order, which: (1) grants preliminary approval of the proposed Settlement; (2) certifies the Settlement Class contemplated by the Parties' Settlement Agreement; (3) orders that the Parties' proposed Notice be sent to the Settlement Class; and (4) schedules a final approval

hearing to consider final approval of the proposed Settlement, as well as approval of attorneys' fees, costs, and service awards to the Class Representatives.[2]

### B. Settlement Negotiations

After meeting and conferring on multiple occasions, the Parties mediated the case on April 29, 2024 before retired Federal Magistrate Judge Morton Denlow of JAMS. The full-day mediation resulted in a proposed agreement, including certain material terms, which are memorialized in the Settlement Agreement and Release (the "Settlement" and/or the "Settlement Agreement"). The Parties have agreed to settle the Litigation on the terms and conditions set forth in the Settlement Agreement in recognition that the outcome of the Litigation is uncertain and that achieving a final result through litigation would require substantial additional risk, uncertainty, discovery, time, and expense for the Parties.

Plaintiffs and Class Counsel have conducted an investigation into the facts and the law regarding the Litigation and have concluded that a settlement according to the terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Class, recognizing: (1) the existence of complex and contested issues of law and fact; (2) the risks inherent in litigation; (3) the likelihood that future proceedings will be unduly protracted and expensive if the proceeding is not settled by voluntary agreement; (4) the magnitude of the benefits derived from the contemplated settlement in light of both the maximum potential and likely range of recovery to be obtained through further litigation and the expense thereof, as well as the potential of no recovery whatsoever; and (5) Plaintiffs'

---

[2] Plaintiffs will file a separate (i) Fee and Expense Application, and (ii) motion for final approval of the settlement. Plaintiffs have proposed a schedule for the filing of said motion(s) in the Proposed Preliminary Approval Order submitted herewith and attached as Exhibit D to the Settlement Agreement.

determination that the settlement is fair, reasonable, adequate, and will substantially benefit the Settlement Class Members.

### C. Terms of the Settlement

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a one million four hundred and seventy-five thousand dollars ($1,475,000) non-reversionary common fund.

#### i. The Settlement Class

The Settlement Class (or "Class") is defined to mean "All individuals in the United States whose Private Information was compromised in the Builders Mutual Data Incident that occurred in December 2022." Excluded from the Settlement Class are: (1) the judges presiding over this Litigation, and members of their direct families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest, and their current or former officers and directors; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. S.A. ¶ 48.

#### ii. The Settlement Benefits

The following benefits will be available to Settlement Class Members who submit valid and timely claim forms.

> a. Credit Monitoring: All Participating Settlement Class Members[3] are eligible to enroll in three (3) years of Credit Monitoring Services, upon submission of a valid Claim Form regardless of whether the Participating Settlement Class Member submits a claim for reimbursement of Unreimbursed Economic Losses or Lost Time.

---

[3] Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline.

b.  Compensation for Unreimbursed Economic Losses: The Settlement Administrator, from the Settlement Fund, will provide compensation, up to a total of $10,000 per person who is a Participating Settlement Class Member, upon submission of a claim and supporting documentation, for Unreimbursed Economic Losses as a result of the Data Incident, including, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges.

c.  Compensation for Lost Time: The Settlement Administrator, from the Settlement Fund, will provide compensation for up to 6 hours of lost time, at $25.00/hour ($150 cap), for time spent mitigating the effects of the Data Incident.[4] Participating Settlement Class Members may submit claims for up to 6 hours of lost time with only an attestation demonstrating that they spent the claimed time responding to issues raised by the Data Incident. This attestation may be completed by checking a box next to the sentence: "I swear and affirm that I spent the amount of time noted in response to the Builders Mutual Data Incident." Claims for lost time can be combined with claims for unreimbursed

---

[4] "Data Incident" means the unauthorized third-party activity on Builders Mutual's computer systems that Builders Mutual discovered on December 15, 2022, and which is the subject of this Litigation.

ordinary and/or extraordinary economic losses but are subject to the $10,000 cap.

d. $100 Cash Compensation (Alternative Cash Payment): Participating Settlement Class Members can elect to make a claim for a $100 Alternative Cash Payment in lieu of the settlement benefits outlined in Settlement Agreement Paragraph 62(i), (ii) and (iii). To receive this benefit, Participating Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. The amount of the Alternative Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments. S.A. ¶¶ 62(i), (ii), (iii), and (iv).

### iii. Administration of Notice and Claims

The Parties have selected Epiq ("Settlement Administrator") to act as the Settlement Administrator to oversee the administration of the settlement. Notice will be given to the Settlement Class via individual notice and will be given primarily by mailing the Short Form Notice (attached to the Settlement Agreement as Exhibit A) by first-class mail to the postal addresses of Settlement Class Members. S.A. ¶ 81. The Notice documents are clear and concise and directly apprise Settlement Class Members of all the information they need to know to make a claim or to opt-out or object to the Settlement. Fed. R. Civ. P. 23(c)(2)(B).

A settlement website will be established and administered by the Settlement Administrator, and shall contain information about the Settlement, including electronic copies of Exhibits A through E to the Settlement Agreement (or any forms of these notices that are approved by the Court), the Settlement Agreement, and all Court documents related to the Settlement (the

"Settlement Website"). S.A. ¶ 53. The Settlement Website is viewed as an important piece of the Notice Plan to Class Members.

All costs for administration and notice will be paid from the Settlement Fund.

### iv.    Exclusions and Objections

The Notice shall explain the procedure for Settlement Class Members to exclude themselves or "opt-out" of the Settlement by mailing a request for exclusion to the Settlement Administrator postmarked no later than the Opt-Out Deadline. The request for exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. Each request for exclusion must request exclusion only for that one individual whose personal signature appears on the request. The Notice must state that any Settlement Class Member who does not file a timely request for exclusion in accordance with this Paragraph will lose the opportunity to exclude himself or herself from the Settlement and will be bound by the Settlement. S.A. ¶ 83. The proposed Opt-Out Deadline is 60 days after the Notice Deadline. *Id*. at ¶ 37.

The Notice shall explain the procedure for Settlement Class Members to object to the Settlement or Fee and Expense Application by submitting written objections to the Court no later than the Objection Deadline. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection and a description of whether the objection applies only to the Settlement Class Member, a subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of any attorneys

representing the objector (if any), as well as a description of the attorney's background and prior experience, the amount of anticipated fees and method of calculation, the attorney's hourly rate, and the number of hours spent working; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a description and/or copies of evidence that may be introduced at the Final Approval Hearing; (vii) a list of proceedings in which the Settlement Class Member and his/her attorney, if applicable, have submitted an objection during the past five years; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id*. at ¶ 84. The proposed Objection Deadline is also 60 days after the Notice Deadline. Id. at ¶ 36.

### v. Attorneys' Fees and Costs and Service Awards to Class Representatives

The Parties did not discuss attorneys' fees or service awards until after class relief was agreed upon. The Settlement Agreement contemplates that at least fourteen (14) days before the Opt-Out and Objection Deadlines, Class Counsel will file a Fee and Expense Application for an award of attorneys' fees to be paid from the Settlement Fund not to exceed 33.33% of the value of the Settlement, or $491,617.50, and litigation expenses up to $25,000. S.A. ¶ 101. Plaintiffs will also move the Court for reasonable service awards of $5,000 per Plaintiff, in recognition of their efforts on behalf of the Class. Id. at ¶ 46.

### D. Fairness Hearing

If the proposed Class is certified and the settlement preliminarily approved, Plaintiffs respectfully request that the Court set a Final Fairness Hearing within a reasonable time after the Notice Deadline, Objection Deadline, and Opt-Out Deadline; and at least 90 days after the Settlement Administrator notifies the appropriate government officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. S.A. ¶ 87.

III. **LEGAL STANDARDS FOR PRELIMINARY APPROVAL, CONDITIONAL CLASS CERTIFICATION, AND APPROVAL OF THE NOTICE FORM.**

A. **Preliminary Approval of Settlement**

Federal Rule of Civil Procedure 23(e) requires judicial approval of any proposed settlement of claims brought on behalf of a class. *See* Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval."). Courts may approve a proposed class settlement upon a "finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assist the Court, Rule 23(e)(1)(A) requires the parties to "provide the Court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Courts in the Fourth Circuit follow a bifurcated approach to determine whether a settlement is "fair, reasonable, and adequate" under Rule 23. See In re MicroStrategy, Inc. Sec. Litig., 148 F.Supp.2d 654, 663 (E.D. Va. 2001) (citing In re Jiffy Lube Sec. Litig., 927 F.2d 155, 158 (4th Cir. 1991)).

First, at the preliminary approval stage, the court determines whether the proposed Settlement is "within the range of possible approval" or, whether there is "probable cause" to give notice of the proposed Settlement to class members. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *accord In re NeuStar, Inc. Sec. Litig*., No. 1:14CV885 JCC/TRJ, 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015). The primary issue before the Court is whether the proposed Settlement is within the range of what might be found fair, reasonable, and adequate. *Matthews v. Cloud 10 Corp.*, Case No. 14-00646, 2015 U.S. Dist. LEXIS 114586, at *4 (W.D.N.C. Aug. 27, 2015); accord MANUAL FOR COMPLEX LITIGATION, FOURTH, §13.14, at 172–73 (2004) ("Manual Fourth") (at the preliminary approval stage, "[t]he judge must make a preliminary determination on the fairness,

reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed Settlement, and date of the final fairness hearing.").

The Court of Appeals for the Fourth Circuit has laid out a series of factors for courts to consider when determining whether a proposed settlement is fair and adequate and, thereby, reasonable. *Jiffy Lube*, 927 F.2d at 159. To determine the fairness of a proposed Settlement, the Court considers: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of class action litigation. *Jiffy Lube*, 927 F.2d at 159. There is a "strong presumption in favor of finding a settlement fair." *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009) (internal quotation omitted). To determine the adequacy of a proposed Settlement, the Court considers: (1) the relative strength of the plaintiff's case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiff is likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Id*. at 159; *MicroStrategy*, 148 F.Supp.2d at 665.

In making the determination of preliminary approval, the Court does not answer the ultimate question of whether the proposed Settlement is fair, reasonable, and adequate; this analysis is reserved for the second stage of the settlement approval process. Instead, the first stage of the settlement approval process is focused on whether the settlement is sufficiently adequate to permit notice to be sent to the class. *See Hall v. Higher One Machines, Inc.*, No. 5-15-CV-670-F, 2016 WL 5416582, at *5 (E.D.N.C. Sept. 26, 2016) ("If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound

by the proposed settlement in order to afford them an opportunity to be heard on, object to and opt out of the settlement."). The court has the discretion to determine whether to approve the proposed Settlement. *Jiffy Lube*, 927 F.2d at 158. "There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." *Covarrubias v. Capt. Charlie's Seafood, Inc.*, No. 2:10-CV-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011).

### B. Conditional Class Certification

"When a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement." *Gamas v. Scott Farms, Inc.*, No. 5:13-CV-447-FL, 2014 WL 12546373, at *2 (E.D.N.C. Dec. 24, 2014). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but must analyze whether the other requirements for certification must have been satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). To approve a class settlement, the Court must still consider the requirements for class certification under Rule 23. *In re NeuStar*, 2015 WL 5674798, at *2 (citing and quoting *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 367 (4th Cir. 2004)). The Settlement Class must also satisfy one of the categories of Rule 23(b). Id. However, the Court may disregard the manageability concerns of Rule 23(b)(3) because the Court may properly consider that there will be no trial. *See Amchem*, 521 U.S. at 620.

### C. Notice Form Approval

As part of the preliminary approval process, the district court must also approve the notice of the settlement that the Parties propose be sent to Class Members. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must comport with due process and provide the "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

reasonable effort." *Id.*; accord *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Rule 23 leaves the form of the notice to the Court's discretion. *See Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va. 2003) ("a court may exercise its discretion to provide the best notice practicable under the circumstances."); *see also* Fed. R. Civ. P. 23(c)(2)(B).

## IV. ARGUMENT

The proposed Settlement warrants preliminary approval. Evaluation under the enumerated *Jiffy Lube* and Rule 23 factors set out above confirms that the proposed Settlement is fair, adequate, and reasonable; accordingly, the Court should grant preliminary approval, and issue notice of the Settlement to the Settlement Class.

### A. The Class Was Adequately Represented

"[T]he adequacy requirement is met when: (1) the named plaintiff does not have interests antagonistic to those of the class; and (2) plaintiff's attorneys are qualified, experienced, and generally able to conduct the litigation." *Brown v. Transurban USA, Inc*., 318 F.R.D. 567 (E.D. Va. 2016) (citation omitted). Here, the Class Representatives have the same interests as other Settlement Class Members as they are asserting the same claims and share the same injuries.

Further, Class Counsel have the experience and qualifications to lead this litigation and the record shows Class Counsel have worked diligently to litigate and ultimately bring this case to resolution. *See* Joint Decl., Exhibit A**;** *See also In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Practices & Prod. Liab. Litig*., 952 F.3d 471, 485 (4th Cir. 2020) (finding counsel's experience in complex civil litigation supported fairness of settlement).

### B. The Proposed Settlement Was Negotiated At Arm's Length

The Court can safely conclude this Settlement was negotiated at arm's length, without collusion, based on the terms of the Settlement itself; the length and difficulty of the negotiations;

and the involvement of a highly experienced mediator, retired Federal Magistrate Judge Morton Denlow of JAMS. *See In re NeuStar, Inc. Sec. Litig.*, No. 1:14–CV–885(JCC/TRJ), 2015 WL 5674798, at *10 (E.D. Va. Sept. 23, 2015) (adversarial encounters support a finding of arms' length negotiations). This factor supports a finding that the Court will likely be able to finally approve the Settlement.

### C. The Relief Is Fair, Reasonable, And Adequate

The relief offered to Settlement Class Members in the proposed Settlement is more than adequate under the factors outlined in Rule 23(e)(2)(C). The Settlement establishes a $1,475,000 non-reversionary common fund. Settlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: three years of credit monitoring services; recovery of up to $10,000 per Participating Settlement Class Member for unreimbursed economic losses; up to 6 hours of lost time at $25 per hour ($150 cap); or a $100 alternative cash payment. Defendants' agreed business practice changes are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside with Defendants.

Class Counsel, a group with a wealth of experience in leading major data breach class actions, strongly believe that the relief is fair, reasonable, and adequate. The Court may rely upon such experienced counsel's judgment. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) ("Absent fraud, collusion, or the like, the district court should be hesitant to substitute its own judgment for that of counsel.")

That the relief is fair, reasonable, and adequate is further confirmed by considering the four specific factors enumerated in Rule 23(e)(2).

### 1. The cost, risk, and delay of trial and appeal

Plaintiffs believe their claims are viable and that they have a reasonably good chance of proving that Defendants data security was inadequate and that, if they establish that central fact, Defendants are likely to be found liable under at least some of the liability theories and statutory and common law Plaintiffs pled in their Consolidated Complaint. While Plaintiffs believe they have strong claims and would prevail, success is not guaranteed.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain —especially where serious questions of law and fact exist, which is common in data security incident litigation. This field of litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.").

Plaintiffs strongly believe in the merits of their case, but also understand that Defendants assert a number of potentially case-dispositive defenses. Should litigation continue, Plaintiffs would need to clear the significant hurdle of class certification, which has been denied in other incident cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013). Plaintiffs dispute the defenses asserted by Defendants—but it is obvious that their success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

Although nearly all class actions involve a high level of risk, expense, and complexity, this is a particularly complex class. Data security incident cases of wide-spread notoriety and implicating data far more sensitive than the data alleged here have been found wanting at the federal district court level. *See, e.g., In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266

F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), reversed in part, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Moreover, these cases can take years to litigate to final resolution. Settlement in the same *In re OPM* litigation took five full years of litigation to achieve.

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, these types of cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. Establishing causation on a class-wide basis in a data breach case is rife with uncertainty.

Another significant risk faced by Plaintiffs here is the risk of maintaining class action status through trial. The class has not yet been certified, and Defendants will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. American Eagle Airlines, Inc.*, No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376, at *10 (C.D. Cal. Sept. 24, 2014). This over-arching risk simply puts a point on what is true in all class actions —class certification through trial is never a settled issue, and is always a risk for the Plaintiffs.

Each risk, by itself, could impede the successful prosecution of these claims at trial and in an eventual appeal—which would result in zero recovery to the class. "Regardless of the risk, litigation is always expensive, and both sides would bear those costs if the litigation continued."

*Paz v. AG Adriano Goldschmeid, Inc.,* No. 14CV1372DMS(DHB), 2016 WL 4427439, at *5 (S.D. Cal. Feb. 29, 2016).

### 2. The method of distributing relief is effective

The proposed distribution process will be efficient and effective. The available relief is detailed clearly in the Notice, which will be provided to all Settlement Class Members and lays out the benefits to which they are entitled. Because Settlement Class Members may make claims through a simple online form or by mail, the method of distributing the relief is both efficient and effective.

### 3. The terms relating to attorneys' fees are reasonable

Class Counsel will request an award of attorneys' fees and litigation costs not to exceed 33.33% of the value of the Settlement, or $491,617.50. Under the Settlement Agreement, Plaintiffs' request for Attorneys' Fees and Expenses must be filed with the Court at least 14 days before the Objection and Opt-Out deadline.

In the settlement negotiations, attorneys' fees were not discussed in any manner until the Parties had reached agreement on the material terms of the Settlement, including the terms of the Class relief. The ultimate fee award will be determined in the discretion of the Court based on an application to the Court based on Fourth Circuit law with the opportunity for comment from Settlement Class Members. Importantly, the Settlement Agreement is not conditioned upon the Court's approval of the fee award.

Class Counsel will also request Service Awards of $5,000 for each of the Class Representatives. Service awards of this size are reasonable. *See In re: Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg.*, No.115MD2627AJTTRJ, 2020 WL 5757504,

at *3 (E.D. Va. Sept. 4, 2020) (granting service award of $5,000). The Settlement Agreement is not conditioned on the Court's approval of this request.

### 4. Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e) mandates that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)-(3). Here, there are no additional agreements.

### 5. The Proposed Settlement Treats Class Members Equitably

Finally, the proposed Settlement treats all Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). All Settlement Class Members will have the same opportunity to file a claim for the same benefits. There is no cap on the number of claims, meaning that no Settlement Class Member will obtain any greater relative benefit over another.

Importantly, direct Notice will be sent to Settlement Class Members, and all Settlement Class Members will also have the opportunity to object to or exclude themselves from the Settlement. And, while Plaintiffs will each be seeking a $5,000 Service Award for their services on behalf of the class, this award is less than the $10,000 amount that any given Settlement Class Member can claim in reimbursements. This factor also supports approval.

### D. The Class Should Be Conditionally Certified For Settlement Purposes

When presented with a settlement-only class, a district court must determine whether a class meets the requirements of Federal Rules 23(a) and 23(b)(2) or 23(b)(3)—save for evaluation of any class manageability issues at trial. *Amchem*, 521 U.S. at 591, 617, 620. Settlement classes are routinely certified in similar consumer data breach cases, including data breach class actions.[5]

---

[5] *See, e.g., In re: Capital One Consumer Data Sec. Breach Litig*., MDL No. 1:19md2915 (AJT/JFA), Doc. 118 (E.D. Va. February 7, 2022); *Abubaker v. Dominion Dental USA, Inc.*, No. 1:19-cv-01050, 2021 WL 6750844 (E.D. Va. Nov. 19, 2021); H*utton v. Nat'l Bd. of Examiners in Optometry, Inc.*, No. 1:16-c-03025, 2019 WL 3183651 (D. Md. July 15, 2019); I*n re: Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800, 2020 WL 256132 (N.D.

There is nothing different about this case, which is demonstrated by examining the requirements of Rule 23(a) and (b).

The Settlement Class satisfies the requirements of Rule 23(a). Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1. Numerosity

Rule 23(a)(1) demands evidence that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No set minimum number of potential class members is required to fulfill the numerosity requirement. *Sanchez-Rodriguez v. Jackson's Farming Co. of Autryville*, No. 7:16-CV-28-D, 2017 WL 396667, at \*2 (E.D.N.C. Jan. 27, 2017). Here, the proposed Settlement Class satisfies numerosity because the Settlement Class contain approximately 106,918 individuals.

### 2. Commonality

The Settlement Class meets Rule 23's "commonality" requirement because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The requirement is "liberally construed . . . a class action will not be defeated solely because there are some factual variations among the members' grievances." *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 537 (E.D.N.C. 1995). Commonality "does not require that all questions of law or fact in a case be common to each class member, rather, only a single common question must exist." *Id*. With respect

---

Ga. March 17, 2020), aff'd in relevant part 999 F.3d 1247 (11th Cir. 2021), cert. denied sub nom. *Huang v. Spector*, 142 S. Ct. 431 (2021), and cert. denied sub nom. *Watkins v. Spector*, No. 21-638, 2022 WL 89334 (U.S. Jan. 10, 2022); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018).

to commonality, "[w]hat matters to class certification is the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc., v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a)(2)'s commonality requirement is met where, as here, the defendant engaged in a common course of conduct. *Fisher v. Virginia Elec. & Power Co*., 217 F.R.D. 201, 223 (E.D. Va. 2003). Here, all Settlement Class Members suffered the same alleged injury—theft of their personal data in the Data Incident—and are asserting the same legal claims. These raise a number of common questions, such as whether Defendants failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members, whether data security safeguards were common across the Class, and whether those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

These common questions, and others alleged by Plaintiffs in their Consolidated Complaint, are central to the causes of action brought here and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23. Accordingly, common questions of law and fact abound. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *11-12; *Anthem*, 327 F.R.D. at 309.

### 3. Typicality

Class Representatives for the Settlement Class fulfill Rule 23(a)'s "typicality" requirement because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality" requirement does not require the Class Representatives to have identical facts and legal claims as the class; rather, the claims "cannot be so different from the claims of absent class members that their claims will not be advanced by [Class Representatives'] proof of [their] own individual claim[s]." *Beaulieu v. EQ Indus. Servs.,*

*Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *13 (E.D.N.C. July 22, 2009). For typicality to be satisfied, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "Generally, the court must determine whether the asserted claims 'arise from the same event or practice or course of conduct and are based on the same legal theories as the claims of the unnamed class members.'" *Id.* at *40 (citing *Rodger*, 160 F.R.D. at 538).

This requirement is readily satisfied in data breach cases like this one. The Class Representatives' claims are typical of other Settlement Class Members because they arise from the same Data Incident and involve the same overarching legal theories. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *12. The legal and factual arguments that the Plaintiffs representing the Settlement Class advance are the same arguments that other Settlement Class Members would advance in support of their claims. In this case, "[b]ecause the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 339 (4th Cir. 2006).

### 4. Adequate Representation

Last, Plaintiffs meet Rule 23(a)(4)'s adequacy requirement because Class Representatives have "common interests with unnamed members of the class" and "vigorously prosecute[d] the interests of the class through qualified counsel." *Beaulieu*, 2009 WL 2208131, at *15 (citing *Olvera-Morales v. Intern. Labor Mgmt Corp.*, 246 F.R.D. 250, 258 (M.D.N.C. 2007)). The adequacy analysis evaluates potential conflicts of interest between named parties and the class. *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). "[B]asic due process requires that the named plaintiffs possess undivided loyalties to absent class members." *Id*.

First, the interests of the Class Representatives fully align with the Settlement Class Members. As discussed above, Plaintiffs are prosecuting the same claims as the Settlement Class, and these claims arise from Defendants' alleged Data Incident. The Class Representatives have also demonstrated their commitment to monitor and supervise the prosecution of the case on behalf of the Settlement Class.

Second, the Class Representatives have protected the interests of the Settlement Class by retaining qualified, experienced counsel to represent the Settlement Class. Plaintiffs' counsel have litigated this vigorously. *See* Joint Declaration of Proposed Class Counsel Supporting Motion for Preliminary Approval of Class Action Settlement. Proposed Class Counsel are recognized for prosecuting large, complex class actions, and have effectively represented numerous plaintiffs in other consumer-protection actions, class actions, and complex business cases, typically as lead or co-lead counsel. Thus, per Rule 23, the proposed Class Representatives and Class Counsel provide adequate representation of the Settlement Class.

### 5. Ascertainability

Rule 23 also contains the implied requirement that the court be able to "readily identify the class members in reference to objective criteria." *EQT Prod. Co*., 764 F.3d at 358. A proposed class representative "need not be able to identify every class member at the time of certification." *Id*. "[E]xtensive and individualized fact-finding" or "mini-trials" render certification inappropriate. *Id*. (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Here, the proposed Settlement Class meets the implied "ascertainability" requirement, because the Settlement Class Members are "readily identifiable." Indeed, Defendants identified each member of the Settlement Class and sent them notice of the Data Incident.

### 6. The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Because the Settlement Class seeks to recover damages, the Court must also determine whether the Settlement Class complies with the commonality and superiority requirements of Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

### a. Common questions of law and fact predominate

The Settlement Class satisfies the predominance inquiry because the "'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Beaulieu*, 2009 WL 2208131, at *20 (citing *Amchem*, 521 U.S. at 623). "The inquiry with respect to the predominance standard focuses on the issue of liability, and if the liability issue is common to the class, common questions are held to predominate over individual ones." *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 89-90 (E.D.N.C. 2009) (internal citation omitted); *accord McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 478 (E.D.N.C. 2010) ("common evidence . . . would establish a prima facie case for the class. Furthermore, the likelihood that class members may have suffered individual damages does not impact the predominance analysis. *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427-28 (4th Cir. 2003) ("Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.").

Here, as in other data breach cases, common questions predominate because all claims arise out of a common course of conduct by Defendants. *See, e.g., Dominion*, 2021 WL 6750844, at *3; *Equifax*, 2020 WL 256132, at *13; *Anthem*, 327 F.R.D. at 311-16. The focus on a defendant's security measures in a data breach class action "is the precise type of predominant question that makes class-wide adjudication worthwhile." *Anthem*, 327 F.R.D. at 312. Other courts have recognized that the types of common issues arising from data breaches predominate over any

individualized issues.[6] Proof of the class claims will leave nothing for Plaintiffs to prove individually. In other words, the class claims predominate over the individual claims.

### b. Class resolution of this litigation is superior to other methods of adjudication

Last, Plaintiffs fulfill the superiority requirement of Rule 23(b)(3). Litigating the same claims of nearly 107,000 persons through individual litigation would obviously be inefficient. The superiority requirement thus is satisfied. *See Equifax*, 2020 WL 256132, at *14; *Anthem*, 327 F.R.D. at 315-16. This case also presents a disincentive to pursue individual lawsuits because the prospect of small individual recoveries is dwarfed by the cost of litigation. Class treatment is undeniably superior to individual adjudications.

## V. PLAINTIFFS' NOTICE PLAN SATISIFIES THE REQUIREMENTS OF THIS COURT

As outlined above, the Notice Plan provided satisfies Rule 23's requirements. The proposed Notices (Exhibits A and B to the Settlement Agreement) provide clear and accurate information as to: (1) a summary of the complaint and the nature and principal terms of the Settlement; (2) the definitions of the Settlement Class; (3) the claims and defenses alleged; (4) the procedures and deadlines for opting-out of the proposed Settlement or submitting objections and the date, time and place of the Final Approval Hearing; and (5) the consequences of taking or foregoing the options available to Settlement Class Members. The proposed Notice informs Settlement Class Members about the attorneys' fees and costs that may be sought by Plaintiffs'

---

[6] *See, e.g., Hapka v. CareCentrix, Inc*., 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland Payment Sys. Inc. Customer Data Sec. Breach Litig*., 851 F. Supp. 2d 1059 (S.D. Tex. 2012) (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Counsel pursuant to Fed. R. Civ. P. 23(h), and the identities and contact information for Class Counsel, Counsel for Defendants, and the Court. Because the Notice Plan complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court (*see, e.g., Manual Fourth* § 21.311-21.312), it should be preliminarily approved by the Court.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) preliminarily approve the proposed Settlement Agreement pursuant to Fed. R. Civ. P. 23(c) and (e); (2) preliminarily certify the proposed Settlement Class; (3) preliminarily approve the proposed Class Notice and Notice forms; and (4) schedule a Final Approval Hearing to consider the proposed Settlement, and approval of attorneys' fees, costs, and service award.

DATED: August 1, 2024

Respectfully submitted,

**RHINE LAW FIRM, P.C.**
/s/ Joel R. Rhine
Joel R. Rhine
NCSB 16028
Email: irr@irr@rhinelawfirm.com
Ruth A. Sheehan
NCSB 48069
Email: ras@rhinelawfirm.com
1612 Military Cutoff Road Suite 300
Wilmington NC 28403
Telephone (910) 772-9960
Fax (910) 772-9062

Dana Smith, Bar No. 51015
Mason A. Barney (*pro hac vice*)
Tyler J. Bean (*pro hac vice*)

**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Telephone: (212) 532-1091
E: dsmith@sirillp.com
E: mbarney@sirillp.com
E: tbean@sirillp.com

Raina C. Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
raina@ straussborrelli.com

Daniel Srourian (*pro hac vice*)
**SROURIAN LAW FIRM, P.C.**
3435 Wilshire Blvd. Suite 1710
Los Angeles, CA 90010
T: (213) 474-3800
E: daniel@slfla.com