**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| In re Builders Mutual Data Security Incident Litigation | Case No. 5:23-CV-579-M-KS |
| | Honorable Judge Richard E. Myers II and Magistrate Judge Kimberly A. Swank |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Matthew Kocher, Mark Rogolino, and James Jackson, individually and behalf of others similarly situated ("Plaintiffs"), hereby submit their memorandum of law in support of their Unopposed Motion for Final Approval of Class Action Settlement.[1]

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23") and this Court's August 27, 2024 Order Granting Preliminary Approval of Class Action Settlement ("Prelim. Approval Order," ECF 42), Plaintiffs respectfully seek final approval of their class action Settlement[2] with Defendants Builders Mutual Insurance Company and Builders Mutual Insurance Company, Inc., ("Builders Mutual," and together with Plaintiffs, the "Parties"). *See* Fed. R. Civ. P. 23(e)(2). The

---

[1] Builders Mutual fully supports approval of the settlement agreement and does not oppose Plaintiffs' Motion. By not opposing Plaintiffs' Motion, Builders Mutual does not concede the factual basis for any claim and denies liability.

[2] Unless otherwise indicated, capitalized terms used in this Memorandum have the same meanings as in the Class Action Settlement Agreement and Release (the "Settlement Agreement" or "SA"). ECF 40-1.

1

Settlement resolves all claims against Builders Mutual on behalf of approximately 106,918[3] Class Members whose personally identifiable information ("PII") was potentially compromised in the December 2022 Data Incident involving Builders Mutual's network.

Through extensive arms'-length negotiations, the Parties reached a Settlement that provides for immediate and significant benefits for the Class. *See* Joint Declaration of Proposed Class Counsel Supporting Motion for Preliminary Approval of Class Action Settlement ("Joint MPA Decl.") at ¶¶ 13, 18 (ECF 40). The Settlement is the result of hard-fought negotiations between experienced counsel who had a comprehensive understanding of the strengths and weaknesses of each Party's claims and defenses. *See id.* ¶¶ 12-14, 16. If finally approved, the Settlement will provide Class Members with the precise relief this lawsuit was filed to obtain.

Specifically, the Settlement negotiated on behalf of the class provides for the ability to claim four significant, meaningful categories of relief from the $1,475,000 non-reversionary Settlement Fund: (1) three-years of credit monitoring services; (2) reimbursement for lost time (up to 6 hours at $25 per hour), and; (3) reimbursement for unreimbursed economic losses up to $10,000.  The fourth benefit is a $100 cash payment (adjusted on a *pro rata* basis) as an alternative to all other benefits. S.A. ¶¶ 62(i), (ii), (iii), and (iv).

Class Counsel zealously prosecuted Plaintiffs' claims, achieving the Settlement Agreement only after extensive pre-suit investigation and negotiations, and months of work finalizing the Settlement Agreement and associated exhibits. After this Court granted preliminary approval, the Claims Administrator—with the help of the Parties—disseminated Notice to the Class and implemented the user-friendly claims process that the Court approved, which included individual

---

[3] This number is less than the number at preliminary approval based upon de-duplication of the Class List during the preparation for sending notice to the Class.

notice provided directly to Class Members whose addresses were known via first class mail and through a state-of-the-art publication notice program. *See* Declaration of Cameron R. Azari of Epiq Class Action and Claims Solutions, Inc. in Connection with Final Approval of Settlement ("Epiq Decl."), ¶¶ 10-26, attached hereto as **Exhibit 1**; Fed. R. Civ. P. 23(c)(2)(B). The Notice provided Settlement Class Members with information regarding how to reach the Settlement Website, make a Claim, and opt-out or object to the Settlement.

The reaction from Settlement Class Members to the Settlement is resoundingly positive. The deadline for Settlement Class Members to opt-out or object to the Settlement was December 9, 2024. There were *zero* individuals who requested exclusion from, or objected to, the Settlement or Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards to Class Representatives, filed on November 26, 2024. *See* Epiq Decl. ¶ 29.

The Settlement delivers tangible, immediate benefits to Settlement Class Members addressing the potential harms of the Data Incident, without protracted and inherently risky litigation. It delivers a fair and adequate resolution for the Class and merits final approval. Accordingly, for the reasons set forth herein, Plaintiffs respectfully request this Court grant their Motion for Final Approval of Class Action Settlement, as well as Plaintiffs' Motion for Approval of Attorneys' Fees, Costs, Expenses, and Service Awards ("Motion for Attorneys' Fees"), filed on November 26, 2024. (ECF 44).

## II.     INCORPORATION BY REFERENCE

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to, and hereby incorporate, Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Memorandum in Support of Motion for Preliminary Approval"), filed on August 1, 2024 (ECF 39) and the

3

accompanying exhibits filed in conjunction therewith (ECF 40-1-5). Plaintiffs also incorporate Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Service Awards and supporting declaration. ECF 44, 45, 46.

### III.   THE SETTLEMENT TERMS

As described in the Settlement Agreement, the settlement benefits are substantial, and will be paid from a $1,475,000 non-reversionary settlement fund.

#### i.   *The Settlement Class*

The Settlement Class is defined as follows:

All individuals in the United States whose Private Information was compromised in the Builders Mutual Data Incident that occurred in December 2022.

Excluded from the Settlement Class are: (1) the judges presiding over this Action, and members of their direct family; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, directors, and employees; and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline. SA ¶ 48.

#### ii. *The Settlement Benefits*

The following benefits are available to Settlement Class Members who have submitted valid and timely claim forms, to be paid from the Settlement Fund.

a. Credit Monitoring: All Participating Settlement Class Members are eligible to enroll in three (3) years of Credit Monitoring Services, upon submission of a valid Claim Form regardless of whether the Participating Settlement Class Member submits a claim for reimbursement of Unreimbursed Economic Losses or Lost Time.

b. Compensation for Unreimbursed Economic Losses: Each Class Member may claim up to a total of $10,000 per person who is a member of the Settlement Class, upon submission of a claim and supporting documentation, for unreimbursed economic losses incurred as a result of the Data Incident.

4

c. Compensation for Lost Time: Class Members may claim compensation for up to 6 hours of lost time, at $25.00/hour ($150 cap), for time spent mitigating the effects of the Data Security Incident. Class Members may submit claims for up to 6 hours of lost time with only an attestation demonstrating that they spent the claimed time responding to issues raised by the Data Security Incident. Claims for lost time can be combined with claims for Unreimbursed Economic Loss but are subject to the $10,000 cap.

d. $100 Cash Compensation (Alternative Cash Payment): Settlement Class Members can elect to make a claim for a $100 Alternative Cash Payment in lieu of all the other settlement benefits outlined above. To receive this benefit, Settlement Class Members must submit a valid claim form, but no documentation is required to make a claim. The amount of Alternative Cash Payments will be increased or decreased on a *pro rata* basis, depending upon the number of valid claims filed and the amount of funds available for these payments.

In addition to the Class Relief, all costs for administration and notice will be paid from the Settlement Fund. Any award of attorneys' fees, expenses, and Service Awards granted by the Court pursuant to Plaintiffs' Motion for Attorneys' Fees will also be paid from the non-reversionary Settlement Fund. *See* ECF 44, 45, 46.

**IV.    NOTICE AND CLAIMS ADMINISTRATION**

1.    <u>CAFA Notice.</u>

Epiq began its work by providing notice of the proposed Settlement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Epiq Decl. ¶ 7. At Builders Mutual's counsel's direction, on August 12, 2024, Epiq sent the CAFA Notice, via Priority Mail, to the Attorneys General of 48 states, the District of Columbia, and the United States Territories. *Id.* A copy of the CAFA Notice is attached as Attachment 1 to Epiq's Declaration. No Attorneys General have objected to, or otherwise commented on, the Settlement.

2.    <u>Direct Mail Notice.</u>

Epiq received one data file from Builders Mutual's counsel on August 30, 2024. *Id.* ¶ 10. The files contained 35,790 records containing names and last known mailing addresses of

5

individuals identified as Settlement Class members. *Id.* Epiq undertook several steps to review and deduplicate the files that were provided and compiled the Class List, resulting in 34,868 unique, identified Settlement Class Member records with addresses. *Id.* To ensure that the Notice of Proposed Settlement (in Postcard format) would be deliverable to Settlement Class Members, Epiq also ran the Class List through the USPS's National Change of Address ("NCOA") database and updated the Class List with address changes received from the NCOA. *Id.* ¶ 12.

On October 10, 2024, Epiq arranged for 34,862 copies of the Notice of Proposed Settlement to be mailed to the Settlement Class and the Settlement Subclass via First Class Mail.[4] *Id.* ¶ 11. As of December 17, 2024, the U.S. Postal Service ("USPS") informed Epiq that 440 copies of the Notice of Proposed Settlement were returned by the USPS. *Id.* ¶ 13. These notices were re-mailed by Epiq to the updated address. *Id.* Additionally, Long Form Notice and Claim Form ("Claim Package") were mailed to all persons who requested one via the toll-free telephone number or other means. *Id.* ¶ 14. As of December 17, 2024, Epiq mailed 21 Claim Packages as a result of such requests. *Id.*

      3.    <u>Publication Notice</u>

Epiq designed and implemented a media plan aimed at providing notice of the Settlement to Settlement Class Members whose addresses are unknown to Defendant. This publication notice plan included a targeted digital notice on a Google advertising network, Facebook, Instagram, and LinkedIn that were designed to encourage participation by Settlement Class Members by linking directly to the Settlement Website. *Id.* ¶ 17-20. The digital notices used language (in both English and Spanish) allowing viewers to identify themselves as potential Settlement Class Members. *Id.* ¶¶ 17-20. These notices delivered millions of impressions. *Id.* ¶ 20. Additionally, the notice

---

[4] A copy of the Postcard Notice is attached to the Epiq Declaration as Attachment 2.

program included sponsored search listings to facilitate Settlement Class Members locating the Settlement Website. *Id.* ¶ 22. Throughout the notice period, these sponsored listings were displayed more than 56,000 times, resulting in 2,561 clicks to the Settlement Website. *Id.* ¶ 23. Finally, the publication notice involved a release via PR Newswire in English and Spanish to 5,000 print and broadcast media outlets as well as 4,500 websites, online databases, internet networks, and social networking media. *Id.* ¶¶ 24-25. This publication notice was the best notice practicable to reach Settlement Class Members for whom Defendant did not have an address sufficient for direct notice and satisfies due process. *Id.* ¶ 9.

4. <u>Settlement Post Office Box, Website, Toll-Free Number, and Email Address.</u>

In addition to the individual direct notice and publication provided, Epiq created a dedicated Settlement Website. *Id.* ¶ 26. The Settlement Website "went live" on September 23, 2024, and contains details of the Settlement, including the Settlement benefits, contact information for Class Counsel, how to calculate and make a claim, a link to the claims filing portal, and the procedure for how to opt out of or object to the Settlement, Frequently Asked Questions, all related Court-documents, and a copy of the Long Form Notice. *Id.* The Settlement Website provides Settlement Class Members with the opportunity to file Claim Forms online as well as downloadable versions of the claim form. *Id.*

Epiq also established a toll-free help line ("Toll-Free Number"), where Settlement Class Members could hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package be mailed to them 24 hours a day, 7 days per week. *Id.* ¶ 27. The website Contact Us page also provides an email address where Settlement Class Members could contact Epiq Claims with any questions or concerns. *Id.*

5.    Claims.

The timing of the claims process was structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, make a claim or decide whether they would like to opt-out or object. As of December 17, 2024, Epiq received 985 timely filed claims. *Id.* ¶ 31. The number of claims submitted to date is not final. Based on Class Counsel's experience, additional claims are anticipated to be filed as the January 8, 2025 deadline approaches. Epiq is still in the process of reviewing and validating claim forms. *Id.* Epiq will provide a final claims report to the Parties once it processes all Claim Forms received by the deadline for Settlement Class Members to submit claims.

6.    Requests for Exclusion and Objections.

Settlement Class Members were provided up to and including December 9, 2024—sixty days after the Notice Deadline—to object to or to request exclusion from the Settlement. Prelim. Approval Order, ¶¶ 10-11 (ECF 42). Similar to the timing of the Claims Process, the timing with regard to objections and requests for exclusion was structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Motion for Attorneys' Fees, which was filed fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement. ECF 44. As of December 17, 2024, Epiq has received zero timely exclusion requests and zero objections to the Settlement. Epiq Decl. ¶ 29.

V.    **PRELIMINARY APPROVAL**

Plaintiffs filed the Motion for Preliminary Approval on August 1, 2024, and the Court entered the Preliminary Approval order on August 27, 2024. ECF Nos. 38, 42. In the Court's Preliminary Approval Order, the Court appointed Plaintiffs Matthew Kocher, Mark Rogolino, and

8

James Jackson as Class Representatives pursuant to Rule 23(e)(2)(A) and Daniel Srourian, Raina C. Borrelli, and Tyler Bean as Class Counsel. Rule 23(e)(2)(A); Prelim. Approval Order ¶ 2. The Court also appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Claims Administrator. *Id.* ¶ 6. The Court further approved the forms of notice, which state the amount of attorneys' fees that would be requested, the fact that costs and expenses would be requested, the amount of service awards that would be requested, as well as approved the plan for disseminating notice to the Class. *Id.* ¶¶ 7-8; SA Exs. A-B. Class Members had until December 9, 2024, to file requests for exclusions and objections, if any. Prelim. Approval Order, ¶¶ 10-11, 17. None were filed. Class Members also have until January 8, 2025, to make claims. *Id.* ¶ 17. Class Counsel submitted a separate Motion for Attorneys' Fees, filed on November 26, 2024 (Docs. 44, 45, 46). The Court scheduled the Final Approval Hearing for January 17, 2025, at 10:30 a.m., at which time the Court will determine whether to finally certify the Action, finally approve the Settlement and Settlement Agreement, grant Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, dismiss the Lawsuits with prejudice, and enter the final approval order and judgment.

## VI.     LEGAL STANDARD

Plaintiffs bring this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e). The primary concern is the "protection of class members whose rights may not have been given adequate consideration during the settlement negotiations." *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991). The Court may "limit its proceedings to whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975). If the court concludes that the proposed settlement is "fair, reasonable, and adequate," it will give final approval to the settlement. *In re Red Hat, Inc. Sec. Litig.*, 5:04-CV-473-BR(3), 2010

9

WL 2710517, at *1 (E.D.N.C. June 11, 2010) (citations omitted).[5] The court begins with a "strong initial presumption that the compromise is fair and reasonable." *S.C. Nat. Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991).

The Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *Manual for Complex Litigation (Fourth)* ("MCL"), § 21.632 (4th ed. 2004). The approval process involves two steps. At the first, or preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval" and warrants notice being issued to the class. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983)). This first step involves both preliminary certification of the class and an initial assessment of the proposed settlement. *Id.*; *see also See Manual for Complex Litigation*, Sec. 30.41 (3d ed. 1995). It is only after a court has preliminarily approved a settlement, and notice has been provided to the Class, that the court makes a final determination of the fairness, adequacy, and reasonableness of a Settlement.

The primary concern for a court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158-59. Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

---

[5] Report and recommendation adopted, 5:04-CV-473-BR, 2010 WL 2710446 (E.D.N.C. July 8, 2010).

10

Moreover, as the Fourth Circuit has recognized, courts strongly favor and encourage settlements. *See, e.g., United States v. Manning Coal Corp.*, 977 F.2d 117, 120 (4th Cir. 1992) ("It has long been clear that the law favors settlement."). "This is particularly true in class actions" and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g., Six v. LoanCare, LLC*, Case No. 5:21-cv-00451, 2022 WL 16747291, at *3 (S.D. W. Va. Nov. 7, 2022) (slip copy) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011) and citing *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998 (noting the "strong judicial policy in factor of settlements, particularly in the class action context")).

Having already received preliminary approval, Plaintiffs now ask this Court to grant final approval of the proposed Settlement as fair, adequate, and reasonable so that Plaintiffs and Settlement Class Members may begin to take advantage of the monetary and non-monetary benefits of the Settlement.

## VII. ARGUMENT

### A. The Claims Administrator Provided Notice Pursuant to this Court's Preliminary Approval Order and Satisfied Federal Rule of Civil Procedure 23 and Due Process.

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through

11

reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means.

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), the notice must:

> (i) clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Here, the direct mail Notice of Proposed Settlement (in Postcard format) sent to those for whom addresses are available is the gold standard and is consistent with Notice programs approved by other courts. *See, e.g., Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 472 (W.D. Va. 2011) (approving notice where individual direct notice mailed by fourth-class mail and settlement website and toll-free number established); *Smith v. Res-Care, Inc.*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *4 (S.D. W. Va. Oct. 27, 2015) (approving notice where individual direct notice mailed and settlement website and toll-free number established); *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) (finding direct mail Notice to each class members' last known address—and a second notice if the first was undeliverable—was the best practicable and satisfied notice requirements). In addition, the publication notice was designed to, and did, provide the best notice practicable to Settlement Class Members for whom Defendant did not have reliable address information. *See Haney v. Genworth Life Ins. Co.*, Civil Action No. 3:22-cv-00055-REP, 2023 U.S. Dist. LEXIS 51918, at *11 (E.D. Va. Feb. 15, 2023) (approving notice plan with a publication component designed by Epiq); *Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 271 F.R.D. 139, 144 (N.D. Ill. 2010) (finding that where individual notice is not possible, "other methods of contacting the class members may be utilized," including publication."). The content of the Notice provided adequately informed

12

Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves, and/or enter an appearance through an attorney, that the court will exclude any class member who requests exclusion, and the binding effect of final approval and class judgment. *See* SA Exs. A-B; ECF 40-1 Ex. A-B; Epiq Decl., ¶ 11 and Attachments 5-8. The Notice utilized clear and concise language that is easy to understand, and was organized in a way that allowed Settlement Class Members to easily find any information that they may be looking for. Thus, it was substantively adequate.

Moreover, the Claims Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Direct notice was sent to 99% of the Settlement Class Members with available mailing addresses. Epiq Decl. ¶¶ 10, 15. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with (and well above) Notice Programs approved in the Fourth Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed. Jud. Ctr., "Managing Class Action Litigation: A Pocket Guide or Judges", 27 (3d Ed. 2010); *Smith*, Civil Action No. 3:13-5211, 2015 WL 6479658, at *5 (approving a "92.13% effective delivery rate to identified Class Members" as an "acceptable, and event exceptional, rate"); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving publication notice rate of approximately 80% of the U.S. population where Settlement Class Members were exposed to notice an average of 2.6 times throughout notice program).

**B. The Settlement Class Should be Finally Certified for Settlement Purposes.**

As Plaintiffs set forth at length in their Motion for Preliminary Approval, the proposed Settlement Class satisfies all of the requirements of Rule 23. *See* Fed. R. Civ. P. 23(a), (b)(3); ECF

13

38. Plaintiffs incorporate that analysis by reference here. The Court preliminarily certified the Settlement Class in its Preliminary Approval Order. Prelim. Approval Order, ECF 27, ¶ 1. Nothing has occurred that would change the Court's previous determination that Plaintiffs satisfy the requirements under Rule 23. Fed. R. Civ. P. 23(a), (b)(3). Specifically, the Settlement Class still meets the requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority under Rule 23(a) and (b)(3). *Id.* Thus, the Court should finally certify the Settlement Class for settlement purposes.

**C. The Settlement is Fair, Reasonable, and Adequate and Should Be Approved.**

1. <u>The Terms of the Settlement Warrant Final Approval under the *Jiffy Lube* Test.</u>

To determine final approval, the Fourth Circuit "adopted a bifurcated analysis, separating factors relating to the 'fairness' of the settlement from those relating to its 'adequacy'." *Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 828 (E.D.N.C. 1994).[6] Fairness focuses on whether the proposed settlement was the product of good-faith bargaining at arm's length, free from collusion. *Jiffy Lube*, 927 F.2d at 159. Adequacy "focuses on whether the consideration provided to the class members is sufficient." *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-CV-00400BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The proposed settlement is "not to be judged against a hypothetical or speculative measure of what might have been

---

[6] "In the Fourth Circuit, the Rule 23(e)(2) analysis has been condensed into the two-step *Jiffy Lube* test which examines the fairness and adequacy of the settlement." *Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *2 (E.D. Va. 2020) (slip copy); *In re Lumber Liquidators Chinese-Manufactured Flooring Prods., Sales Pracs. & Prods. Liab. Litig.*, 952 F.3d 471, 484 (4th Cir. 2020) ("[B]ecause our factors for assessing class action settlement almost completely overlap with the new Rule 23(e)(2) factors, the outcome … would be the same under both our factors and the Rule's factors."); *see also Yost v. Elon Prop. Mgmt. Co.-Lexford Pools 1/3, LLC*, Civil Action No. ELH-21-1520, 2023 WL 185178, at *4 (D. Md. Jan. 13, 2023) (same) (granting final approval after evaluating adequacy and fairness of settlement under *Jiffy Lube* factors).

14

achieved by negotiators" in the best of all possible deals. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (affirming district court's final approval of class settlement).

        I.     <u>The Settlement Terms Meet the *Jiffy Lube* Adequacy Requirement.</u>

In analyzing the adequacy of a proposed settlement, the Court should consider the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Beaulieu*, 2009 WL at *26 (citing *Jiffy Lube*, 927 F.2d at 158; *Horton*, 855 F. Supp. at 829–30).

        a.   *The Relative Strength of the Case on the Merits, the Risks of the Case if the Case Were to Go to Trial, and the Duration and Expense of Additional Litigation Weigh in Favor of Final Approval.*

By their very nature, because of the many uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise. *See S.C. Nat'l Bank v. Stone*, 749 F. Supp. At 1423 (D. S.C. 1990) (noting that settlement spares litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources). Here, the first three *Jiffy Lube* factors are closely related, and weigh in favor of final approval of the proposed settlement.

The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs believe their case is strong, there would be substantial risk in litigating the case. Data breach cases are, by nature, especially risky and expensive. Such cases also are innately complex. *See, e.g., In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800, 2020 WL 256132, at *32-33 (N.D. Ga. Mar. 17, 2020)

15

(recognizing the complexity and novelty of issues in data breach class actions); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.") ("This field of litigation is evolving; there is no guarantee of the ultimate result."). This case is no exception to that rule. It involves 106,918 class members, complicated and technical facts, and a well-funded and motivated defendant.

There are numerous substantial hurdles Plaintiffs would have to overcome before the Court might find a trial appropriate, including a motion to dismiss, class certification, and summary judgment. Like any complex class action, data breach cases are challenging and time consuming to litigate, particularly here, where Builders Mutual disputes Plaintiffs' allegations and denies that it is liable for any harm caused to Plaintiffs from the Data Incident. Builders Mutual has indicated it will vigorously defend the case. While Plaintiffs believe their claims are strong, success is not guaranteed. Thus, despite Plaintiffs' confidence in the strength of this case, numerous legal issues and factual disputes exist that undermine the certainty of a more favorable outcome for the Settlement Class.

Rather than face this risk and uncertainty, the Settlement allows for Settlement Class Members to obtain benefits within the near future—as opposed to potentially waiting for years—and eliminates the possibility of receiving no benefits whatsoever. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact …. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Resolution in the near-term also helps mitigate any harm that the Settlement Class Members may have suffered by providing access

16

to credit monitoring benefits in the near-term, rather than after prolonged litigation.

Litigating this case to a favorable conclusion will require a considerable amount of time and resources and weighs in favor of accepting the Settlement now. *See In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money, for '[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now.'") (internal citation omitted)).

Here, the relief (from a $1,475,000 non-reversionary common fund) provided for in the Settlement represents a significant and excellent result for the Settlement Class: (1) three-years of credit monitoring services; (2) reimbursement for lost time (up to 6 hours at $25 per hour); (3) reimbursement for unreimbursed economic losses up to $10,000, and; (4) a $100 alternative cash payment in lieu of the other settlement benefits. SA ¶ 62.

Based upon each of these categories of relief available to Settlement Class Members, it cannot be questioned that this is a sizeable recovery for the Settlement Class and represents real, meaningful benefits for Settlement Class Members.[7] The Settlement provides benefits that address

---

[7] These Settlement terms are consistent with, and in fact better than, agreements approved by courts in similar data breach cases across the country. *See, e.g., Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo. Dec. 22, 2020) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements;); *Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge, et al. v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members in the form of: reimbursement up to $180 of out-of-pocket expenses and time spent dealing with the data breach;

17

all potential harms of a data breach without the substantial risks, uncertainties, and duration and expense of continued litigation. Accordingly, the Settlement easily weighs in favor of final approval.

          b. *The Solvency of Builders Mutual on a Litigated Judgment is Neutral and Does Not Preclude Final Approval.*

There is no evidence that Builders Mutual is in danger of becoming insolvent in the likelihood of a recovery in Plaintiffs' favor on a litigated judgment. Thus, this factor is neutral in the analysis and does not preclude the Court from granting final approval.

          c. *The Degree of Opposition to the Proposed Settlement.*

The reaction of the Settlement Class reaction to the proposed Settlement has been undeniably positive. As of the Objection and Opt-Out Deadlines, Epiq received zero exclusion requests and zero objections to the Settlement. Epiq Decl. ¶ 29. This lack of requests for exclusion supports that the Settlement satisfies the adequacy requirement. *See Skochin v. Genworth Fin., Inc.*, Civil Action No. 3:19-cv-49, 2020 WL 6697418, at *4 (E.D. Va. 2020) (holding that proposed settlement satisfied adequacy requirement with 191 opt outs and 32 objections out of class of 207). "'It is well established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" *West v. Continental Automotive, Inc.*, Docket No. 3:16-cv-00502-FDW-DSC, 2018 WL 1146642, at *6 (W.D. N.C. Feb. 5, 2018)) (quoting *National Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases)). The

---

credit monitoring services valued at $100; and equitable relief in the form of data security enhancements); *Linnins v. HAECO Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1-3 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose PII was alleged disclosed in breach).

presumption in favor of final approval applies here with no objections to the Settlement nor any opt-outs.

II.    <u>The Settlement Terms Meet the *Jiffy Lube* Fairness Requirement.</u>

The Fourth Circuit has listed four factors that a court should consider in concluding whether a proposed settlement agreement is fair, and reached in good faith and without collusion: (1) the posture of the case at the time it settled; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the relevant experience of counsel. *Beaulieu*, 2009 WL at *24 (citing *Jiffy Lube*, 927 F.2d at 158–59; *Horton*, 855 F. Supp. at 828).

"A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations." *Harris v. McCrackin*, C.A. Nos. 2:03–3845–23, 2:03–3943–23, 2:04–2314–23, 2006 WL 1897038, at *5 (D. S.C. July 10, 2006); *see also ADESSO Homeowners' Ass'n v. Holder Properties, Inc.*, Case No. 3:16-cv-710-JFA, 2017 WL 11272589, at *8 (D. S.C. May 23, 2017) ("[A] proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arms' length negotiations."). This presumption is applicable here.

Here, at the time of settlement, the parties had met and conferred on multiple occasions ahead of participating in mediation. This is an ideal time for settlement, as the Parties can direct their resources towards settlement, as opposed to lengthy and expensive formal discovery and protracted litigation. The Settlement is the result of protracted and intense, arm's-length negotiations between highly experienced attorneys who are familiar with class action litigation—and data breach class actions in particular—and with the legal and factual issues in these cases. *See* Joint MPA Decl. ¶¶ 12-14; ECF 40-3,4,5 (Firm Resumes). Before discussing potential

19

settlement, the Parties completed an extensive investigation into details of the data breach as well as damages suffered by Plaintiffs and the Class and met and conferred regarding the potential for early settlement—both of which helped them to fully understand the strengths and weaknesses of their claims and defenses and the risks of continued litigation. Joint MPA Decl. ¶¶ 7, 12. On April 29, 2024, the Parties participated in a mediation with retired Federal Magistrate Judge Morton Denlow of JAMS, a highly talented and sought-after mediator, negotiating at arm's length and communicating their positions through him. *Id.* ¶¶ 12-13. This session with Judge Denlow resulted in a proposed agreement to certain material terms of the Settlement. *Id.* ¶ 12. Following their mediation session, the Parties continued negotiating back and forth before reaching the particular terms of the Settlement Agreement and associated exhibits. *Id.* ¶ 13. Throughout all negotiations, Class Counsel and counsel for Builders Mutual fought hard for the interests of their respective clients.

Accordingly, the Settlement satisfies the *Jiffy Lube* test for fairness and adequacy, and the Settlement should therefore be finally approved by the Court.

## VIII. CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable settlement that guarantees Settlement Class Members substantial, immediate relief in the form of direct reimbursements for expenses incurred and time spent relevant to the Data Incident, and credit monitoring and identity theft protections. For these and the above reasons, Plaintiffs respectfully request this Court grant their Motion for Final Approval of the Class Action Settlement, finally certify the Settlement Class, and determine that the Notice met the requirements of Rule 23(c)(2)(B) and due process.[8]

> **Commented [TB1]:** Question for local counsel - is it better to attach the proposed order as an exhibit, or say it is "being submitted herewith"?

Dated: January 2, 2025

---
[8] A [Proposed] Final Approval Order and Judgment is attached hereto as **Exhibit 2**.

By: /s/ _Joel R. Rhine_
Joel R. Rhine, NC SBN 16028
Ruth A. Sheehan, NC SBN 48029
RHINE LAW FIRM, P.C.
1612 Military Cutoff Road, Suite 300,
Wilmington, NC 28403
Telephone: (910) 772-9960
Facsimile: (910) 772-9062
jrr@rhinelawfirm.com
ras@rhinelawfirm.com

Raina C. Borrelli
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

Tyler J. Bean
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: 929-677-5144
Facsimile: 646-417-5967
tbean@sirillp.com

Daniel Srourian, Esq.
**SROURIAN LAW FIRM, P.C.**
468 N. Camden Dr., Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Facsimile: (213) 471-4160
Email: daniel@slfla.com

_Class Counsel and Attorneys for Plaintiffs_

21

**CERTIFICATE OF SERVICE**

I hereby certify that on January 2, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 2nd day of January, 2025.

By: */s/ Joel R. Rhine*